**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

-----------------------------------------------------------------

| | | |
|---|---|---|
| MORGAN FOWLER | : | |
| 1 Falcon Court | : | |
| Wilmington, DE 19808 | : | CIVIL ACTION NO.: _____ |
| | : | |
| Plaintiff, | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| SSN 2110 LINCOLN HWY LANCASTER LLC | : | |
| d/b/a SPARK BY HILTON LANCASTER | : | |
| DUTCH COUNTRY | : | |
| 5159 W Woodmill Drive, Suite 15 | : | |
| Wilmington, DE 19808; AND | : | |
| | : | |
| SSN HOTEL MANAGEMENT LLC d/b/a | : | |
| SSN HOTELS D/B/A SPARK BY HILTON | : | |
| LANCASTER DUTCH COUNTRY | : | |
| 5159 W Woodmill Drive, Suite 15 | : | |
| Wilmington, DE 19808 | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------------

## COMPLAINT – CIVIL ACTION

Plaintiff Morgan Fowler ("Plaintiff"), by and through her undersigned attorney, for her

Complaint against Defendants SSN 2110 Lincoln Hwy Lancaster LLC d/b/a Spark by Hilton

Lancaster Dutch Country ("SSN 2110") and SSN Hotel Management, LLC d/b/a SSN Hotels

d/b/a Spark by Hilton Lancaster Dutch Country ("SSN Hotel Management") (collectively,

"Defendants"), alleges as follows:

### INTRODUCTION

1.      Plaintiff brings this Complaint contending that Defendants violated her rights

protected by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.,*

the Pregnant Workers' Fairness Act ("PWFA"), 42 U.S.C. § 2000gg, *et seq.*, and Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[1]

2.      In relevant part, Plaintiff contends she was subjected to a hostile work environment and differential treatment on the basis of her sex, pregnancy, disabilities, and request(s) for reasonable accommodations in connection thereto, in violation of Title VII, the Pregnant Workers' Fairness Act, and the Americans with Disabilities Act, that Defendants failed to accommodate her and retaliated against her because of her requests for pregnancy-related and/or disability-related accommodations in violation of the PWFA, Title VII, and/or the ADA, and that Defendants constructively discharged her and/or terminated her employment in retaliation for engaging in legally-protected activity in violation of Title VII, the PWFA, and/or the ADA.

**PARTIES**

3.      Plaintiff Morgan Fowler is a resident of the State of Delaware and currently maintains a residence at 1 Falcon Ct., Wilmington, DE 19808.

4.      Upon information and belief, Defendant SSN Hotel Management, LLC d/b/a Spark by Hilton Lancaster Dutch Country is a limited liability company organized and existing under the laws of the State of Delaware which is registered to do business in the Commonwealth of Pennsylvania.  Upon information and belief, Defendant SSN Hotel Management is an owner and/or managing member of SSN 2110 Lincoln Hwy Lancaster d/b/a Spark by Hilton Lancaster Dutch Country.

5.      Upon information and belief, Defendant SSN 2110 Lincoln Hwy Lancaster LLC d/b/a Spark by Hilton Lancaster Dutch Country is a limited liability company organized and

---

[1] Plaintiff intends to amend her Complaint to add parallel counts of discrimination and retaliation under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.* upon the administrative exhaustion of those claims, which will occur on July 2, 2025.

existing under the laws of the Commonwealth of Pennsylvania, where it operates the business location at 2110 Lincoln Hwy E, Lancaster, PA 17602 at which Plaintiff was employed.

6.    Upon information and belief, Defendants SSN Hotel Management and SSN 2110 are a joint, single, and/or integrated employer with respect to the individuals Defendants' employed at Spark by Hilton Lancaster Dutch Country, including, but not limited to Plaintiff. Upon information and belief, Defendants share employees and collectively assert control over said individuals for purposes of hiring, firing, discipline, assigning, directing, and setting and enforcing payroll and other administrative policies.

**JURISDICTION AND VENUE**

7.    On or around July 2, 2025, Plaintiff filed a Charge of Discrimination against Defendants with the United States Equal Employment Opportunity Commission (the "EEOC"), thereby satisfying the requirements of 42 U.S.C. § 12117(a); 2000e-5(b) and (e).  Plaintiff's EEOC Charge was docketed as Charge No. 530-2025-07603.  Plaintiff's EEOC Charge was filed within one hundred eighty (180) days of the unlawful employment practices alleged herein.

8.    By correspondence dated February 19, 2026, Plaintiff received a Notice of Right to Sue Upon Request from the EEOC, advising her that she had ninety (90) days to file suit against Defendants.

9.    On or about April 21, 2026, within the relevant statutory timeline, Plaintiff filed the instant matter.

10.    Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

11.    This action is authorized and instituted pursuant to the Pregnant Workers' Fairness Act ("PWFA"), 42 U.S.C. § 2000gg, *et seq.* Title VII of the Civil Rights Act of 1964

3

("Title VII"), 42 U.S.C. § 2000e-1, *et seq.*, and Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

13. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the events giving rise to this action occurred in this district.

**FACTUAL ALLEGATIONS**

14. Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

15. On February 12, 2024, Plaintiff began her employment with Defendants as Director of Sales.

16. Throughout the course of her employment, Plaintiff performed her job well, receiving positive feedback regarding her performance and no disciplinary action.

17. On July 30, 2024, Plaintiff spoke with Laura Taylor ("Ms. Taylor"), Defendants' Direct Sales Supervisor and Regional Manager regarding Defendants' sudden increase in pressure to meet unrealistic goals.

18. Ms. Taylor agreed Plaintiff was being held to unrealistic expectations with respect to hotel budgeting.

19. Around that same time, in or around August 2024, Defendants' General Manager, Alex Bedolla (Mr. Bedolla"), began making sexually-inappropriate comments to Plaintiff.

20. By way of example, Mr. Bedolla asked Plaintiff, "Have you ever been someone's side mistress?" and "Do you have an OnlyFans?"

21.     Mr. Bedolla also told Plaintiff, "If I had an OnlyFans, all the girls who work for me would subscribe," and "Kelly doesn't like pretty girls, and Kelly doesn't like you," implying that Mr. Bedolla found Plaintiff to be "pretty."

22.     On September 5, 2024, Plaintiff informed Ms. Taylor and Mr. Bedolla that she was pregnant, with a due date at the end of April 2025, and requested flexible scheduling in connection with her doctor's appointments.

23.     On September 27, 2024, Plaintiff provided Ms. Taylor and Mr. Bedolla, along with Kevin Delaney ("Mr. Delaney"), VP of Operations, a doctor's note advising that because of her pregnancy, Plaintiff would not be able to take her medications for two disabling health conditions, i.e. Postural Orthostatic Tachycardia Syndrome (POTS) and chronic fatigue.

24.     Plaintiff's doctor advised that Plaintiff would thus likely "have acute episodes of fatigue, dizziness, chest pain, [and] palpitations," and requested that Plaintiff be allowed to work from home or be excused from work when needed to recover therefrom.

25.     Explaining this letter to Defendants, Plaintiff emphasized that while she was at "higher risk during her pregnancy," she did not anticipate needing to take frequent time off.

26.     Unfortunately, shortly thereafter, Plaintiff came down with a fever (which is particularly problematic during pregnancy) and was diagnosed with COVID-19.

27.     Despite Defendants initially implying Plaintiff could work from home as she recovered, on October 2, 2024, Ms. Taylor informed Plaintiff she would not be allowed to work from home and would not even be paid for the days during which she had already done so that week.

28.     Defendants ultimately decided that Plaintiff would not be permitted to work from home at all, despite her doctor's recommendations.

29.     Defendants failed to engage in the interactive process required under the ADA, PWFA, and PHRA in connection with Plaintiff's requests to work from home due to her POTS and chronic fatigue, which were exacerbated by her aforementioned pregnancy-related inability to take relevant medications.

30.     Due to this unfair treatment, the increased pressure, anxiety, and fear of retaliation Plaintiff experienced after disclosing her pregnancy and need for accommodations, and Mr. Bedolla's harassment, Plaintiff filed a complaint with Defendants' HR Representative, Lynn Hopkins ("Ms. Hopkins").

31.     Meanwhile, Mr. Bedolla's inappropriate behavior worsened.

32.     For example, on November 20, 2024, Mr. Bedolla made a sudden motion towards her breast, to which Plaintiff had a visibly negative reaction.

33.     As a result, Mr. Bedolla drew up short of actually touching her breast, claiming by way of excuse that Plaintiff "had a fly on [her] boob."

34.     Plaintiff promptly reported Mr. Bedolla's sexually harassing conduct to Ms. Taylor, although Plaintiff is unaware of any action the latter took to address it.

35.     On December 10, 2024, Mr. Bedolla made unprompted remarks to Plaintiff regarding her pregnancy, stating, among other things, "Your body is snatched," which is a slang way of saying that a woman is attractively shaped, and "An abortion would be reasonable."

36.     The following day, on December 11, 2024, Mr. Bedolla asked if Plaintiff ever "went on" a stripper pole.

37.     On January 14, 2025, Plaintiff submitted a second formal complaint to Ms. Hopkins regarding the sexually-charged behavior Plaintiff was being subjected to by Mr. Bedolla

and the discrimination and retaliation she was experiencing after requesting pregnancy and disability accommodations.

38.     In addition to giving specific examples of Mr. Bedolla's harassing behavior, Plaintiff questioned Defendants' refusal to allow her to work from home upon occasion due to her POTS, which Plaintiff stated she felt was a reasonable accommodation under the ADA.

39.     Plaintiff also expressed concern about being judged by her team for not being in the office due to a health condition entirely beyond her control.

40.     Two days later, on or about January 16, 2025, Plaintiff was asked to meet with Ms. Taylor, Ms. Hopkins, Mr. Delaney, and recently hired Regional Operations Manager, Angela Atkins ("Ms. Atkins").

41.     During this meeting, Mr. Bedolla's sexually harassing behavior was discussed, as well as Plaintiff's pregnancy-related disabilities.

42.     However, instead of addressing Mr. Bedolla's inappropriate behavior, Ms. Taylor, Ms. Hopkins, and Mr. Delaney, and Ms. Atkins turned the tables on Plaintiff, asking her, "Did you ever ask him to stop?"

43.     At the conclusion of this meeting, Plaintiff was asked what she wanted, to which Plaintiff replied "either put me somewhere else, or fire him," referring to Mr. Bedolla.

44.     At no time thereafter did Defendants follow up with her about the meeting, nor did Defendants take any remedial and/or corrective action in connection thereto.

45.     Following the meeting, during which Defendants implicitly sanctioned Mr. Bedolla's inappropriate behavior, Plaintiff was increasingly ignored by management, excluded from sales and account discussions, stripped of involvement with important deals, and forced to

use vacation days for absences in connection with her disabilities and/or pregnancy-related disabilities.

46. Defendants' refusal to even consider allowing her to work from home during POTS flareups (which were exacerbated by her pregnancy and resulting inability to take medication) led to her missing more time than necessary and caused unnecessary disruptions to her work.

47. On or about March 17, 2025, Plaintiff received her first negative performance review from Mr. Bedolla, the very same manager about whom she had lodged multiple complaints of sexual harassment and pregnancy/disability discrimination.

48. At no time prior thereto was Plaintiff notified of any performance deficiencies, nor had she received any performance-related discipline or coaching.

49. Despite this, Plaintiff was now being criticized for not hitting the budget targets which Defendants had previously acknowledged were unrealistic.

50. As such, Plaintiff reasonably concluded that Mr. Bedolla and/or Defendants were simply retaliating against her for her multiple complaints of sexual harassment and/or pregnancy and disability discrimination and retaliation.

51. Accordingly, because of the discriminatory and retaliatory work environment described above, on March 17, 2025, Plaintiff advised Defendants that she would be resigning her employment effective March 31, 2025.

52. Although Defendants originally accepted her resignation and planned separation date, they then retracted their acceptance and terminated her employment.

53. Upon information and belief, Defendants had a continuing need for her job duties and has since replaced her with a non-pregnant, non-disabled individual.

8

54.     In light of the foregoing, Plaintiff contends she was subjected to a hostile work environment and differential treatment on the basis of her sex, pregnancy, disabilities, and request(s) for reasonable accommodations in connection thereto, in violation of Title VII of the Civil Rights Act of 1964, the Pregnant Workers' Fairness Act, and the Americans with Disabilities Act.

55.     Plaintiff further contends that Defendants failed to accommodate her and retaliated against her because of her requests for pregnancy-related and/or disability-related accommodations in violation of the PWFA, Title VII, and the ADA.

56.     Finally, Plaintiff contend that Defendants constructively discharged her and/or terminated her employment in retaliation for engaging in legally-protected activity in violation of Title VII, the PWFA, and the ADA.

57.     Plaintiff has, because of Defendants' unlawful, discriminatory, and retaliatory actions alleged herein, struggled to obtain other employment, and has been forced to expend significant out of pocket expenses on health care.

58.     As a result of Defendants' deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential commissions and bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her professional reputation.

**COUNT I**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e, *et seq.***
**SEXUAL HARASSMENT/HOSTILE WORK**
**ENVIRONMENT/RETALIATION/CONSTRUCTIVE DISCHARGE**

59.    Paragraphs 1 through 58 are hereby incorporated by reference as though the same were fully set forth at length herein.

60.    Defendants employed at least fifteen (15) employees at their various locations at all times relevant hereto.

61.    Plaintiff is a woman who, at times relevant hereto was pregnant, and is/was therefore a member of protected classes under Title VII.

62.    Defendants permitted and/or allowed to exist a hostile work environment because of sex and pregnancy as described above.

63.    Defendants had knowledge of the sexual harassment and pregnancy discrimination to which Plaintiff was being subjected, but failed to take prompt remedial action to address it.

64.    Plaintiff engaged in protected activity as described above by complaining about the sexual harassment and pregnancy discrimination to which she was being subjected.

65.    Defendants subsequently retaliated against Plaintiff as described above, subjecting her to a retaliatory hostile work environment.

66.    The sexually and retaliatory hostile work environment to which Plaintiff was subjected adversely affected Plaintiff's psychological wellbeing and unreasonably interfered with Plaintiff's work performance, ultimately leading to her constructive discharge from employment.

67.    Defendants acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

68.    As a direct and proximate result of Defendants' discriminatory actions, Plaintiff has suffered and is suffering significant mental, emotional, psychological, physical, and

economic damages, including, but not limited to, loss of income, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendants, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant her the maximum relief allowed by law, including, but not limited to:

a)      Back wages and front pay, in an amount to be determined at trial;

b)      Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendants for their intentional, willful, negligent, wanton, and/or malicious conduct;

c)      Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

d)      Pre-judgment interest in an appropriate amount; and

e)      Such other and further relief as is just and equitable under the circumstances.

### COUNT II
### PREGNANT WORKERS' FAIRNESS ACT ("PWFA")
### 42 U.S.C. § 2000gg, *et seq.*
### PREGNANCY DISCRIMINATION, FAILURE TO ACCOMMODATE, & RETALIATION/CONSTRUCTIVE DISCHARGE

69.      Paragraphs 1 through 68 are hereby incorporated by reference as through the same were fully set forth at length herein.

70.      Defendants employed at least fifteen (15) employees at their various locations at all times relevant hereto.

71.      As a pregnant female, Plaintiff was a member of a protected class under the PWFA, and was entitled to request certain reasonable accommodations in connection with her pregnancy, including, but not limited to the ability to work from home as needed.

11

72. Defendants failed to accommodate Plaintiff and subjected her to disparate treatment as a result of her pregnancy, including, but not limited to a hostile work environment because of pregnancy.

73. Plaintiff engaged in protected activity under the PWFA as aforesaid by seeking pregnancy-related accommodations and complaining about perceived pregnancy discrimination.

74. Defendants retaliated against Plaintiff for requesting an accommodation for her pregnancy and/or engaging in protected activity as aforesaid.

75. The hostile work environment and retaliation to which Plaintiff was subjected adversely affected Plaintiff's psychological wellbeing and unreasonably interfered with Plaintiff's work performance, ultimately leading to her constructive discharge from employment.

76. Upon information, Plaintiff was subsequently replaced by a non-pregnant individual.

77. As a result of Defendants' deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, and earnings potential, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendants, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages and front pay, in an amount to be determined at trial;

b) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendants for their intentional, willful, negligent, wanton, and/or malicious conduct;

c)      Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

d)      Pre-judgment interest in an appropriate amount; and

e)      Such other and further relief as is just and equitable under the circumstances.

## COUNT III
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*
## DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION

78.     Paragraphs 1 through 77 are hereby incorporated by reference as though the same were fully set forth at length herein.

79.     At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

80.     At all times relevant hereto, Defendants had at least fifteen (15) employees.

81.     Plaintiff was a qualified individual with a disability within the meaning of the ADA.

82.     Plaintiff's disabilities (i.e. POTS and chronic fatigue) substantially limit/limited Plaintiff in one or more major life activities, including but not limited to sleeping, concentrating, communication, performing manual tasks, and working.

83.     Defendants failed to engage in the interactive process required under the ADA with respect to Plaintiff's request for accommodations for her disabilities, including, but not limited to the ability to work from home as needed.

84.     By reason of the foregoing, Defendants, through their agents, officers, servants, and/or employees, has violated the ADA by discriminating against Plaintiff because of her disabilities and/or in retaliation for plaintiff's request(s) for a reasonable accommodation and other legally protected activity in connection thereto.

13

85.     As a result of Defendants' deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, earnings potential, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendants, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant her the maximum relief allowed by law, including, but not limited to:

a)     Back wages and front pay, in an amount to be determined at trial;

b)     Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendants for their intentional, willful, negligent, wanton, and/or malicious conduct;

c)     Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

d)     Pre-judgment interest in an appropriate amount; and

e)     Such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:     /s/ Michael Groh
Michael Murphy, Esq.
Michael Groh, Esq
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.

14

Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
mgroh@phillyemploymentlawyer.com
Attorneys for Plaintiff

Dated: April 21, 2026

## DEMAND TO PRESERVE EVIDENCE

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.